**United States District Court**
**District of Massachusetts**

```
_____
                                  )
Cognex Corporation,               )
                                  )
          Plaintiff,              )
                                  )
          v.                      )     Civil Action No.
                                  )     22-10051-NMG
Air Hydro Power, LLC,             )
                                  )
          Defendant.              )
_____)
```

**MEMORANDUM & ORDER**

GORTON, J.

This case arises from a contract dispute between Cognex Corporation ("Cognex" or "plaintiff") and Air Hydro Power, LLC ("Air Hydro" or defendant"). In its amended complaint, Cognex sought declaratory judgment that it had limited obligations under the agreement (Count I) and damages for Air Hydro's alleged breach of a forum-selection clause (Count II) and for violation of the covenant of good faith and fair dealing (Count III). In January, 2023, this Court allowed defendant's motion to dismiss with respect to Count I but denied that motion with respect to Counts II and III.

In defendant's subsequent responsive pleading, it brought counterclaims for damages for alleged violations of 1) the Florida Franchise Act (Count I), 2) the Florida Deceptive and Unfair Trade Practices Act (Count II), 3) the Indiana Franchise

- 1 -

Act (Count III), 4) the Indiana Deceptive Franchise Practices Act (Count IV), and for 5) Cognex's alleged breach of the covenant of good faith and fair dealing (Count V), 6) Cognex's alleged interference with the business relationships of Air Hydro (Count VI), 7) equitable relief under a theory of promissory estoppel (Count VII) and 8) restitution for unjust enrichment (Count VIII).

Pending before the Court is plaintiff's motion to dismiss all of defendant's counterclaims (Docket No. 48) and plaintiff's motion to strike defendant's jury demand as to all of the counterclaims (Docket No. 46).  For the following reasons, the motion to dismiss will be allowed and the motion to strike will be denied as moot.

## I.   **Background**

In December, 2021, Air Hydro sued Cognex in Florida state court ("the Florida Action") for alleged breaches of a then-operative distribution agreement ("the Agreement") between the parties.  Cognex filed this action, initially seeking only declaratory judgment, in the District of Massachusetts in January, 2022.  Air Hydro did not serve its complaint in the Florida Action until several days after Cognex filed and served its complaint in Massachusetts.

Air Hydro moved to dismiss this action in February, 2022, in response to which Cognex filed an amended complaint in March,

2022.  The amended complaint preserved plaintiff's claim for declaratory judgment and added new claims for breach of contract and breach of the covenant of good faith and fair dealing.  Air Hydro promptly moved to dismiss the amended complaint, and several months later, the parties filed a stipulation reporting that the Florida Action had been dismissed with prejudice.

In January, 2023, this Court allowed Air Hydro's motion to dismiss the declaratory judgment count concerning its obligations under the agreement (Count I) but denied the motion with respect to Cognex's damages claims (Counts II and III).  Air Hydro's counterclaims all arise from the decision of Cognex to terminate the Agreement whereby Air Hydro distributed Cognex's products.  The Agreement set December 31, 2021, as its expiration date but provided that it would not expire:

> if the parties have both signed an amendment extending this Agreement, prior to the expiration the Agreement's then current term.

Cognex notified Air Hydro on November 1, 2021, that it did not intend to renew the Agreement for the following year.  Air Hydro's eight counterclaims have followed in due course.

## II. __Motion to Dismiss__

### A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a

matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may consider certain categories of documents extrinsic to the complaint "without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). For instance, a court may consider documents of undisputed authenticity, official public records, documents central to a plaintiff's claim and documents that were sufficiently referred to in the complaint. Watterson, 987 F.2d at 3.

A court may not disregard properly pled factual allegations in the complaint even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the court's inquiry must focus on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B.  Application**

    **1.  Florida Franchise Act Claim**

Cognex contends that the choice of law provision in the Agreement, which provides that performance of the Agreement shall be governed and construed according to Massachusetts law, bars Air Hydro's claim under the Florida Franchise Act ("FFA"). In a diversity action, the forum state's choice of law rules applies. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Massachusetts courts give effect to a contract's choice-of-law clause unless

> application of that provision: [1] would be contrary to a fundamental policy of a state; which has [2] a materially greater interest than the chosen state in the determination of the particular issue; and which ... [3] would be the state of the applicable law in the absence of an effective choice of law by the parties.

Optos, Inc. v. Topcon Med. Sys., Inc., 777 F.Supp.2d 217, 229 (D. Mass. 2011) (quoting Roll Sys., Inc. v. Shupe, 1998 WL 1785455, at *2 (D. Mass. Jan. 22, 1998)) (internal quotation marks omitted).

Air Hydro contends that, because Massachusetts lacks a franchisee-protection statute, applying the choice-of-law provision would be contrary to Florida's policy decision to protect franchisees.  But as Cognex notes, the FFA contains no anti-waiver provision. F.S.A. §§ 817.416.  By contrast, other Florida statutes concerning unfair or deceptive acts in the

course of franchising contain explicit anti-waiver provisions. See, e.g., F.S.A. §§ 686.413(3)(l); 686.415.  The Florida legislature made an affirmative policy choice not to include an anti-waiver provision in the FFA.

Other federal district courts have reached similar conclusions "that no Florida policy interest is damaged by allowing choice-of-law agreements to bar the application of the Florida Franchise Act." Cottman Transmission Systems, LLC v. Kershner, 536 F.Supp.2d 543, 550 (E.D.Pa. 2008) (citing Hardee's Food Sys., Inc. v. Bennett, 1994 WL 1372628, at *5 (S.D.Fla. Mar.24, 1994)).  Accordingly, a Massachusetts court would give effect to the Agreement's choice-of-law provision and the application of Massachusetts law bars the FFA claim.  The Court will allow Cognex's motion to dismiss Count I.

### 2.  Florida Deceptive and Unfair Trade Practices Act Claim

Air Hydro's claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") fails because it did not have a franchise relationship with Cognex as defined by the FTC Franchise Rule.  The parties do not dispute that the FTC Franchise Rule, 16 C.F.R. § 436.1(h), controls the definition of a franchise under FDUTPA.  That Rule defines a franchise as "any continuing commercial relationship or arrangement" in which:

> (1) The franchisee will obtain the right to operate a business that is identified or associated with the franchisor's trademark, or to offer, sell, or distribute goods, services, or commodities that are identified or associated with the franchisor's trademark;(2) The franchisor will exert or has authority to exert a significant degree of control over the franchisee's method of operation, or provide significant assistance in the franchisee's method of operation; and (3) As a condition of obtaining or commencing operation of the franchise, the franchisee makes a required payment or commits to make a required payment to the franchisor or its affiliate.

16 C.F.R. § 436.1(h).

Cognex contends that its relationship with Air Hydro does not satisfy the third prong of the franchise definition because Air Hydro has not made or committed to make a "required payment" to plaintiff.  The FTC Franchise Rule defines "required payment" as

> all consideration that the franchisee must pay to the franchisor or an affiliate, either by contract or by practical necessity, as a condition of obtaining or commencing operation of the franchise.

16 C.F.R. § 436.1(s).

Air Hydro makes four arguments in support of its contention that it has made a required payment to Cognex.  All are unavailing.

First, Air Hydro asserts that Cognex required it to purchase demonstration equipment.  Air Hydro cites Section 4.1.2 of the Agreement, which states that Air Hydro will "purchase and maintain" products for demonstration "as recommended by Cognex

and agreed to per the SMP." Section 10.0 of the Agreement, however, provides that if demonstration equipment is not purchased at specified quantities, Cognex may remove standard discounts.

The purchase of demonstration equipment is not "a condition of obtaining or commencing operation of the franchise," but rather, an incentive program that enables Air Hydro to obtain discounts.  Air Hydro's cursory alternative assertion that it was required to purchase demonstration equipment by "practical necessity" fails to elaborate on how or why purchasing demonstration equipment was practically necessary and is therefore, unavailing.

Air Hydro next contends that Cognex required it to pay software licensing fees for Cognex's "ViDi" software, which allegedly facilitates resale of Cognex's products.  No provision of the Agreement expressly requires Air Hydro to purchase the "ViDi" software.  In its opposition to the motion to dismiss, however, Air Hydro asserts that purchase of the software was a "practical necessity" and thus, within the definition of "required payment" in the FTC Franchise Rule. See 16 C.F.R. § 436.1(s).  In support, Air Hydro cites Section 7.3 of the Agreement, which requires Air Hydro

> [to] display in a clearly visible location in its
> documentation and/or software display screens a notice
> that indicates to its customers that [Air Hydro]'s

> product contains copyrighted software under license
> from Cognex. [Air Hydro] shall not remove notices or
> identifying characteristics from Cognex Products.

Nothing in Section 7.3 of the Agreement plausibly requires Air
Hydro to purchase software used to support resale efforts.
Section 7.3 of the Agreement merely requires Air Hydro to
disclose that a product it sells contains proprietary software
under license from Cognex.

Air Hydro's third contention is that it has made required
payments in the form of hiring and training employees to become
involved in the distribution of Cognex's products.  Air Hydro
alleges that some of the training was both mandatory and hosted
by Cognex but Cognex replies that Air Hydro does not even allege
that it was required to pay Cognex to hire or train staff.  Air
Hydro retorts by asserting that this Court can

> infer that when Air Hydro made payments to Cognex, a
> portion of these payments was intended to reimburse
> Cognex for mandatory trainings and bootcamps hosted by
> Cognex.

As an initial matter, Air Hydro fails to identify the
specific payments to which it refers.  Nor does it provide
support for its conclusory contention that this Court should
infer that such unidentified payments were intended as
remuneration for mandatory training.  A federal court is not
required to accept "a complaint's conclusory statements without
reference to its factual context." Ashcroft v. Iqbal, 556 U.S.

662, 686 (2009).  Accordingly, costs defendant incurred from hiring and training employees do not equate to required payments under the FTC Franchise Rule.

Air Hydro's final argument in support of its contention that it has made a "required payment" to plaintiff is that it incurred costs to build demonstration facilities "as directed by Cognex."  Similar to hiring and training employees, investment in demonstration facilities is sunk cost expended to further Air Hydro's business goals, not required payments made to Cognex. Air Hydro does not expound on how Cognex allegedly directed it to incur building costs nor does Air Hydro further address this argument in its opposition brief.

Air Hydro has failed plausibly to assert that it has made a "required payment" to Cognex as defined in the FTC Franchise Rule.  Accordingly, Air Hydro is not a franchisee of Cognex under the FTC Franchise Rule and the Court will allow Cognex's motion to dismiss Count II.

### 3. Indiana Franchise Act Claim

The counterclaim brought by Air Hydro under the Indiana Franchise Act ("IFA") does not plausibly allege that Air Hydro maintained a franchise relationship with Cognex.  Under the IFA, a franchise is defined in relevant part as a contract in which:

> (1) a franchisee is granted the right to engage in the business of dispensing goods or services, under a

> marketing plan or system prescribed in substantial
> part by a franchisor;
> (2) the operation of the franchisee's business
> pursuant to such a plan is substantially associated
> with the franchisor's trademark, service mark, trade
> name, logotype, advertising, or other commercial
> symbol designating the franchisor or its affiliate;
> and
> (3) the person granted the right to engage in this
> business is required to pay a franchise fee.

Ind. Code §§ 23-2-2.7-5; 23-2-2.5-1(a).

The dispute between the parties centers on whether Air Hydro was "required to pay a franchise fee."  Ind. Code § 23-2-2.5-1(a)(3).  A franchise fee is defined as

> any fee that a franchisee is required to pay directly
> or indirectly for the right to conduct a business to
> sell, resell, or distribute goods, services, or
> franchises under a contract agreement, including, but
> not limited to, any such payment for goods or
> services.

Ind. Code § 23-2-2.5-1(i).

As in its FDUTPA claim, Air Hydro asserts that its purchase of demonstration equipment constitutes the required payment of a fee.  While the IFA and FDUTPA definitions of a franchise differ slightly, the conclusion that Cognex did not require Air Hydro to purchase demonstration equipment, pay software licensing fees, hire and train employees or build demonstration facilities under the FDUTPA, see supra, Section IV.B.2, is equally compelling here.  Accordingly, Air Hydro does not plausibly allege that it is a franchisee of Cognex under the IFA and the Court will allow Cognex's motion to dismiss Count III.

### 4. Indiana Deceptive Franchise Practices Act Claim

The claim pursuant to the Indiana Deceptive Franchise Practices Act ("IDFPA") is predicated on the conclusion that Air Hydro is a franchisee under Ind. Code § 23-2-2.5-1(a).  Because Air Hydro has failed to state a plausible allegation that it was required to pay a franchise fee, the Court will allow Cognex's motion to dismiss Count IV.

### 5. Breach of the Covenant of Good Faith and Fair Dealing

Air Hydro contends that Cognex breached its duty of good faith and fair dealing by not compensating Air Hydro for the value of unsold demonstration equipment.  In Massachusetts, "every contract is subject to an implied covenant of good faith." Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 821 (1991).  The implied covenant seeks

> [to] ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract, and that, when performing the obligations of the contract, the parties remain faithful to the intended and agreed expectations of the contract.

Chokel v. Genzyme Corp., 867 N.E.2d 325, 329 (Mass. 2007) (internal quotations and citations omitted).  The implied covenant is breached when one party violates the reasonable expectations of the other party. Id.

Air Hydro's theory of breach is left unexplained in its counterclaim.  It asserts in its opposition, however, that

Cognex had discretion under the Agreement to compensate Air
Hydro for unsold demonstration equipment and failure to exercise
that discretion is a breach of the duty of good faith.  Cognex
points out that under Section 10.5.1(a) of the Agreement, Air
Hydro expressly waived any

> right to return any Products in its inventory to
> Cognex or to otherwise exchange Product inventory for
> newer Product(s) or seek indemnity from Cognex for any
> unsold or unusable inventory.

Air Hydro counters that demonstration equipment is not
inventory but rather, equipment.  Regardless of its description,
Air Hydro has not plausibly alleged that it had a reasonable
expectation of remuneration for demonstration equipment.  No
provision in the Agreement indicates that Cognex would consider
compensating Air Hydro for any purchased demonstration
equipment.  The facts alleged do not explain how Air Hydro
otherwise developed a reasonable expectation of recompense.
Thus, the Court will allow Cognex's motion to dismiss Count V.

### 6. Tortious Interference with a Business Relationship

Air Hydro asserts that Cognex has tortiously interfered
with its business relationships by diverting customers away from
Air Hydro for Cognex's benefit and selling directly into Air
Hydro's sales territory.  To state a claim for tortious
interference with a business relationship, a plaintiff must
plausibly plead facts that show

> (1) the plaintiff had a contract or advantageous
> business relationship with a third party, (2) the
> defendant knowingly induced the third party to break
> the contract or to forgo the business relations, (3)
> the defendant's interference was improper in motive or
> means, and (4) the plaintiff was harmed by the
> interference.

Kelleher v. Lowell Gen. Hosp., 152 N.E.3d 126, 132-33 (Mass.

App. Ct. 2020) (citing Psy-Ed Corp. v. Klein, 459 Mass. 697,

715-716, 947 N.E.2d 520, 535 (2011)).

The core dispute is whether the alleged decision of Cognex

to retain sales leads for Air Hydro's customers and to sell into

Air Hydro's territory were improper under the third prong of the

claim.  Cognex avers that under the Agreement, it retained the

right to sell into Air Hydro's territory and to provide sales

leads at its own discretion.  Indeed, Section 2.1.1 of the

Agreement provides that

> [Air Hydro's] appointment hereunder is nonexclusive
> and that Cognex reserves the right, at any time, to
> directly or indirectly sell or license any of the
> Products within [Air Hydro's] Territory.

Further, Section 5.1 of the Agreement states that

> Cognex will, at its discretion, transfer Sales Leads
> when such leads require Partner support and are based
> in [Air Hydro's] Territory.

The express terms of the Agreement permit Cognex to sell

into Air Hydro's territory and determine whether to transfer

sales leads to Air Hydro.  Thus, Cognex's decisions to retain

sales leads to Air Hydro's customers and to sell into Air Hydro's territory were not improper.

Air Hydro rejoins that the Agreement does not permit Cognex to establish a substantially identical sales business that competes with Air Hydro under the Indiana Deceptive Franchise Practices Act.  It has already been established, however, that Air Hydro is not a franchisee of Cognex under the Indiana Deceptive Franchise Practices Act. See supra, § IV.B.4. Accordingly, the Court will allow Cognex's motion to dismiss Count VI.

### 7. Promissory Estoppel

Air Hydro asserts a claim for promissory estoppel, specifically that it reasonably relied on Cognex's alleged promise to renew the Agreement.  Air Hydro alleges that on November 1, 2021, it was made aware of Cognex's decision not to renew the Agreement and was officially sent notice of non-renewal on November 30, 2021.  The Agreement expired on December 31, 2021.

In Massachusetts, a claim of promissory estoppel requires a plausible pleading that

> (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise.

MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 496 (1st Cir. 2013).  In addition, it is unreasonable as a matter of law to rely on oral representations that the terms of a written contract specifically contradict. Neff Group Distribs., Inc. v. Cognex Corp., 2022 WL 171156025, at *5 (D. Mass Nov. 22, 2022).

Air Hydro's principal argument is that it reasonably relied on (undated) oral representations of Cognex that it intended to renew the Agreement.  Cognex responds that any oral renewal discussion contradicts the plain text of the Agreement and thus reliance on any such representation was unreasonable as a matter of law.  Cognex refers on Section 3.0, which states that the Agreement shall

> expire on December 31, 2021 [but] not expire if the parties have both signed an amendment extending this Agreement, prior to the expiration of the Agreement's then current term.

Cognex also cites the integration clause of the Agreement which disclaims extra-contractual, oral representations.  Air Hydro retorts that Section 3.0 does not expressly state that renewals cannot be oral and merely provides for how the parties "could" renew the Agreement.

Air Hydro's construction of Section 3.0 is not plausible. The provision that the Agreement "shall . . . expire" on December 31, 2021, is the default condition that can be reversed only if the parties agree in writing to extend the Agreement.

The integration clause of Section 5.0 confirms that the Agreement does not countenance oral renewal.  Thus, it was unreasonable as a matter of law for Air Hydro to rely on the alleged oral renewal representations of Cognex in light of the contrary terms of the written Agreement.  The Court will allow Cognex's motion to dismiss Count VII.

### 8. Unjust Enrichment

Finally, Air Hydro asserts a claim of unjust enrichment premised on the theory that Cognex received the benefit of Air Hydro's purchase of demonstration equipment and its general investment in the Cognex brand.  A plaintiff asserting a claim for unjust enrichment in Massachusetts must plausibly allege that

> (1) he or she conferred a benefit upon the defendant, (2) the defendant accepted that benefit and (3) the defendant's retention of the benefit would be inequitable without payment for its value.

Neff Group Distribs., Inc., 2022 WL 17156025, at *2 (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009)).

Cognex contends that the purchase of demonstration equipment and other investments was covered by the terms of the Agreement in Sections 4.2.1, 4.6 and 10.0.  Under Massachusetts law, a

> plaintiff is not entitled to recovery on an unjust-enrichment . . . theory where there is a valid

contract that covers the same subject matter and defines the obligations of the parties.

Guldseth v. Fam. Med. Assocs. LLC, 45 F.4th 526, 541 (1st Cir. 2022).

Here, Sections 4.2.1 and 10.0 govern both the purchase of demonstration equipment and the forfeiture of discounts for failure to purchase demonstration equipment.  The obligations and entitlements of the parties with respect to demonstration equipment are pellucidly spelled out in the Agreement, precluding Air Hydro's claim of unjust enrichment with respect to its purchase of demonstration equipment.  Finally, the contention that Air Hydro conferred a benefit on Cognex through general investment in the Cognex brand lacks specificity and elaboration.  Accordingly, the Court will allow Cognex's motion to dismiss Count VIII.

**ORDER**

For the foregoing reasons, the motion of plaintiff, Cognex Corporation, to dismiss (Docket No. 48) is, as to all counts, **ALLOWED**, and the motion of plaintiff to strike the jury demand of defendant, Air Hydro Power, LLC (Docket No. 46) is **DENIED** as moot.

**So ordered.**

 /s/ Nathaniel M. Gorton 
Nathaniel M. Gorton
United States District Judge

Dated:  September 8, 2023

- 19 -